NEW YORK LIFE INS. CO. v. MANNING et al.

(Supreme Court, Special Term, New York County. June 20, 1910.)

1. INSURANCE (§ 400*)—LIFE POLICIES—CONTESTABILITY.

A life policy made incontestable by its terms cannot be avoided for fraud or misrepresentation.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1086; Dec. Dig. § 400.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. EVIDENCE (§ 234*)—DECLARATIONS—EFFECT.**

In a suit to cancel a life policy the proceeds being claimed by each of several defendants, admissions by one claiming as assignee do not bind insured's representatives who do not claim through the assignee, but, so far as made before the latter's assignment to another, they bind his assignee.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 869–872; Dec. Dig. § 234.*]

**3. INSURANCE (§§ 136, 137*)—LIFE POLICIES—DELIVERY AND PAYMENT OF PREMIUM—EVIDENCE—SUFFICIENCY.**

A $5,000 life policy was left at insured's office for several weeks, but when the agent called to collect the first premium, which he claimed to have paid, insured declined to take the policy, saying he would take one for $2,500, but, when it was presented, he declined it. Insured while very ill executed an assignment of the $5,000 policy to the agent at the latter's request to secure him for the premium paid. The agent returned the $2,500 policy, and received one for $5,000, which he assigned, and on which he paid premiums. *Held*, that there was no delivery of the $5,000 policy to insured nor payment of premium by him, defeating recovery.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 219–245; Dec. Dig. §§ 136, 137.*]

**4. CONTRACTS (§ 42*)—DELIVERY—ESSENTIALS.**

Acceptance of a written contract with intent to assume its benefits and burdens is essential to a legal delivery of it.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 207–214; Dec. Dig. § 42.*]

**5. INSURANCE (§ 137*)—LIFE POLICIES—PREMIUMS—PAYMENT.**

Payment of a life insurance premium by insurer's agent without insured's request or promise of payment does not bind insurer as to insured nor as to the agent claiming as assignee of the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 231–245; Dec. Dig. § 137.*]

**6. TENDER (§ 26*)—TENDER IN COURT—EFFECT.**

A successful plaintiff cannot deduct its costs from an amount tendered in court, since by making the tender he relinquishes his right to the amount.

[Ed. Note.—For other cases, see Tender, Cent. Dig. §§ 88–95; Dec. Dig. § 26.*]

Action by the New York Life Insurance Company against Elvira Manning, administratrix, and others. Judgment directed.

James H. McIntosh, for plaintiff.
William McArthur, for defendant Manning.
Begg, Begg & Begg, for defendants Moore and McGowan.

LEHMAN, J. The plaintiff herein seeks to have a policy of insurance, which pretends to insure the life of Charles Nicchia, declared null and void. The various defendants, except the Crown Bank of Canada, which has not appeared herein, all claim to be the owners of the policy and counterclaim for the face of the policy which each claims became due to him or her upon the death of Charles Nicchia. The policy is expressly declared to be "incontestable," and the plaintiff concededly cannot avoid its obligation on the ground of fraud or misrepresentation. It can obtain the relief demanded herein only if it can show that the policy had no inception. Part of the evidence

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

consists of alleged admissions by one William McGowan Moore, a former agent of the plaintiff, who obtained from Nicchia the application for insurance, paid to the company the first premium, less his commissions of 60 per cent. upon such premium, and thereafter received from Nicchia a paper which purported to be an absolute assignment of the policy of insurance.

The first serious difficulty in the case is presented by the question of the effect of these admissions by Moore on the other defendants. Clearly no statements made by Moore can bind the representatives of the deceased, Charles Nicchia, who did not claim through Moore. As to subsequent assignees the question is more serious, and at the trial I reserved decision upon the question whether any statements made by Moore could bind them. It appears that at the time these admissions were made by Moore the policy had been assigned by him to the Crown Bank of Canada, and thereafter the defendant McGowan received an assignment from both the Crown Bank of Canada and from Moore. In so far as McGowan is the assignee from Moore, these admissions are evidence against him, because they were made prior to such assignment. However, McGowan asserts that his title comes from the Crown Bank, and that the assignment by Moore was a mere superfluity. I believe and find that McGowan took the assignment from the Crown Bank in a sense as agent for Moore, but that he paid value to the bank for this assignment. Conceding that he obtained from the bank all its title for his own benefit, and that no such statement made by Moore can affect such title, yet these statements must affect any title he thereafter received from Moore. I have therefore adhered to the ruling that I made at the trial, and have regarded the admissions of Moore as binding upon the defendant McGowan only in so far as he claimed title through Moore. The assignment to the Crown Bank was made prior to these admissions, and, in so far as the Crown Bank had title to this policy, it transferred its title to McGowan, and no admissions made by Moore could affect McGowan as assignee of the Crown Bank. It appears undisputed that Charles Nicchia applied on August 26, 1905, to the plaintiff through Moore, its agent, for a policy of life insurance for $5,000 payable to his estate. The application contained a clause:

"That the insurance hereby applied for shall not take effect unless the premium is paid and the policy delivered during my lifetime, and that unless otherwise agreed in writing the policy shall then relate back to and take effect as of the date of this application."

The claim of the plaintiff is that there was no valid contract of insurance in force until the policy was delivered to Nicchia and the premium paid, and that the delivery contemplated by this clause was not a mere manual delivery, but a delivery accompanied by acceptance with the intent to constitute a binding contract, and the payment of the premium was to be a payment made either by the insured or by some other person in his behalf. Nicchia is now dead, but before his death he made a deposition as to the circumstances surrounding the transaction. This deposition was introduced in evidence, and upon this deposition the entire case of the plaintiff rests. It appears that the plaintiff in response to Nicchia's application wrote out a policy on

September 8, 1905, bearing No. 3,740,507, and sent it to their Toronto branch. This policy was received by Moore and taken to Nicchia's office, and left there for several weeks. No premium was paid at that time, and Moore made no demand nor did Nicchia promise to pay the premium. Several weeks thereafter Moore came for a check and told Nicchia that he had paid the premium. At that time Nicchia told Moore that it was not necessary, he could have given his own check, and that he no longer desired to take a $5,000 policy, but would be willing to take one for $2,500. At that time he did not desire the $5,000 policy because he was going to take the policy with another company which he thought offered greater inducements. Moore then took the $5,000 policy, and returned it to the plaintiff, who sent two $2,500 policies on January 31, 1906, in its place. Moore took one of the policies to Nicchia, who examined it, but declined to accept it as he thought it called for the same premium as the original $5,000 policy, and, if he was going to pay the full premium, he desired full insurance. Thereafter Nicchia became very ill, and during his illness, and while he was at the hospital, Moore called on him and asked him to sign a paper in order to protect him for the premium he had paid. Nicchia then signed a paper for this purpose. This paper is in form an absolute assignment of the policy to Moore. Thereafter Moore returned to the plaintiff the two policies for $2,500, and received in return a policy for $5,000 to be delivered to Nicchia. This policy he retained until he assigned it to the Crown Bank of Canada. Nicchia never saw this policy, and the two next annual premiums were paid by Moore or by his assignee.

In November and December, 1908, Moore tried to obtain money from Nicchia, who was then dying from tuberculosis, for the return of the policy, and only then did Nicchia offer to pay any premiums or assert any claims to the insurance. Moore also tried to obtain money from the plaintiff for the surrender of the policy, and admitted to plaintiff's attorney that the premium was never paid by Nicchia, and that Nicchia had never promised to pay the premium or to accept the policy. This admission is, of course, not binding upon Nicchia, but is referred to here because it represented the first information to the plaintiff of the circumstances, and plaintiff immediately thereafter began this suit.

In considering the testimony, I have given full faith to everything testified to by the witnesses in behalf of Nicchia's personal representatives. Their attitude appeared to me frank and fair, but, though perhaps they showed that Moore was attempting to obtain an unfair advantage of the intestate, the testimony is hardly material upon the main issue, whether or not this policy of insurance had a valid inception. I am unable from the testimony to reach any conclusion other than that there was no delivery to Nicchia and no payment of the premium in his behalf. A delivery of a contract in law involves an acceptance with intent to assume both its benefits and its burdens. At no time did Nicchia receive the policy with such intent. He never paid the premium and never agreed to pay it. He apparently even in January did not believe that he had bound himself to take a $5,000 policy, and, though he says that he did not pay the premium in May

only because he was unable to sign checks, it appears that he was able to sign the assignment with a firm hand, and I do not see why a signature on an assignment involves less effort than on a check.

Nor could the payment of the premium by Moore make the insurance binding on the plaintiff. Moore made the payment of his own accord without request from Nicchia or promise of repayment by him. He was the plaintiff's agent at the time and made a payment of only 40 per cent., retaining the 60 per cent. commission to which he was entitled on the first annual premium. A payment by an agent under such circumstances is certainly not the payment of the premium contemplated by the contract. The company does not insure for the first year for a 40 per cent. premium. It insures for a full premium and pays its agent 60 per cent. commission, expecting to be repaid for this commission by the probable subsequent annual payments. It receives full consideration for its commission only when the agent obtains for it an actual bona fide client who accepts the insurance and who may be expected to pay future premiums. Moore was not acting in accordance with his instructions, nor in accordance with the duty he owed to the plaintiff, and the payment of a premium by him cannot inure to his own benefit nor to the benefit of the insured, who did not direct or ratify that payment. It appears to me that this payment by Moore was made in the hope and expectation that he could thereafter persuade Nicchia to accept the policy and ratify his prior payment, thus entitling him to receive his commission. He knew that such payment was to be made within 60 days from the date of the application, and, if not made within that time, or the time extended, he was, under the by-laws of the insurance company, precluded from delivering the policy. Inasmuch as he paid only 40 per cent., he could not lose much, if anything, if the policy was thereafter canceled. Even if Nicchia accepted a policy for half the amount, he would profit. Before the policy was accepted Nicchia became desperately ill. Moore's duty to the company then required him to return the policy. Instead of so doing, he endeavored to take advantage of the circumstances by obtaining the policy for his own benefit. Nicchia was apparently in a condition to understand what he was doing, but not to make any careful examination of papers submitted to him. He was told that he must sign a paper to protect Moore. Apparently believing that he had no interest in the policy, he signed a paper which was in fact an assignment. He could and did understand that thereby he was relinquishing rights to insurance that he never claimed, but he did not examine or understand the actual contents of the paper. When he was attacked by tuberculosis which followed and was a result of the critical illness, and found out that there was a policy of insurance on his life apparently outstanding, he naturally desired the benefit of it and then tendered payment of the premium due on the policy.

His attitude before his illness and his attitude thereafter in allowing two annual premium dates to pass unheeded is not consistent with the claim of his representatives that he had prior to that date accepted the burdens and the benefits of the policy, and his estate cannot be enriched by the fraud of the agent. Neither Moore nor his assignees are entitled to anything except a return of the premiums paid, and, even as

to these, I do not decide that they have a valid claim to the first premium, but only that they are entitled thereto because the plaintiff has tendered the same in court.

Since Nicchia has been guilty of no fraud or misrepresentation and his representatives have frankly laid the matter before this court, I do not think they should be obliged to pay costs. Costs may be taxed by the plaintiff against the other defendants who have appeared. I cannot direct the plaintiff to deduct its costs from the premiums because by its tender it has already relinquished its right to this amount. It must tax the costs and secure payment in any way open to it without specific direction contained in the judgment.